**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

**Dated: September 30 2009**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 06-32473 |
| | ) | |
| Rettig Enterprises, Inc., | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 07-3149 |
| | ) | |
| Rettig Enterprises, Inc., | ) | Hon. Mary Ann Whipple |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| CadleRock Joint Venture, L.P., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### MEMORANDUM OF DECISION AND ORDER
### REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT

This adversary proceeding is before the court on the parties' cross motions for summary judgment [Doc. ## 42 & 55], their respective oppositions [Doc. ## 49 & 60], and Plaintiff's reply [Doc. # 51]. In its amended complaint, Plaintiff/Debtor Rettig Enterprises, Inc. ("Plaintiff") alleges that Defendant CadleRock Joint Venture, L.P. ("Defendant") is the assignee of a note, mortgage and judgment from RFCBC, Inc. that

arise from a loan obligation incurred, and security interests granted, by Plaintiff on April 1, 2003, but for which it received no consideration. Plaintiff seeks rescission of the underlying transactions due to failure of consideration and fraud and seeks to avoid the underlying transactions as fraudulent transfers under 11 U.S.C. § 548(a)(1)(B) and Ohio Revised Code § 1336.01 et seq. For the reasons that follow, Plaintiff's motion will be denied and Defendant's motion will be granted in part and denied in part.

## FACTUAL BACKGROUND

The following facts are not in dispute. On or about April 1, 2003, Dawn Rettig ("Rettig"), as Plaintiff's president and on behalf of Plaintiff, entered into a Term Loan Agreement ("Loan Agreement" or "Agreement") with The Peoples Banking Company, a division of RFC Banking Company, Inc. ("the Bank"), for the extension of credit in the amount of $1,740,000. [Doc. # 19, Ex. C]. The Agreement states that Plaintiff requested the extension of credit in order to purchase the Bank's interest in certain leases referred to as the "ADT Equipment Leases" and to "refinance existing indebtedness of ADT II . . . to [the Bank] pursuant to the Business Manager Agreement between ADT II and [the Bank] dated as of July 30, 2002." [*Id.*, p. 1 "Background Information"].

ADT II, LLC, ("ADT II") is a cable construction company in which Rettig's husband, Kevin Rettig, owned a fifty percent interest. [Doc. # 19, Ex. C, p. 58]. It was formed in 2002 to address certain tax issues and fulfill the cable construction contracts of American Digital Technologies Corporation ("ADT Corp"), also in which Kevin Rettig owned an interest.[1] [Doc. # 48, K. Rettig Depo, p. 93-94]. ADT II entered into agreements to lease equipment from ADT Corp in order to conduct the cable construction business. [*Id.* at 110]. ADT Corp, and later ADT II, operated under a business manager agreement with the Bank. Under that contract, the Bank factored accounts receivable owed to the companies. [*Id.* at 96, 124]. By April 2003, ADT Corp had filed for bankruptcy relief,[2] and ADT II was experiencing financial difficulties primarily due to a large customer having also filed for bankruptcy protection, thus resulting in the nonpayment of accounts receivable that had been factored by the Bank. [*Id.* at 98-100; Plaintiff's Ex. C].

---

[1] According to Kevin Rettig, after he learned that ADT Corp had failed to pay Social Security withholding taxes for several years, he sought legal advice on how to address the situation. [Doc. # 48, K. Rettig Depo., p. 91, 93]. He was advised to cause ADT Corp to file for bankruptcy protection and to create a new company, ADT II, which would be the operating company to fulfill ADT Corp's cable construction contracts and, in doing so as a new company, would be current on its Social Security withholding tax obligations. [*Id.* at 93-94].

[2] ADT Corp filed for relief under Chapter 11 of the Bankruptcy Code on August 7, 2002. [Case No. 02-35135].

2

As a result, ADT II was falling behind on its obligations to the Bank under the business manager agreement. [K. Rettig Depo., p. 111].

These circumstances led to the negotiation of the Loan Agreement by Kevin Rettig and the Bank in order to restructure ADT II's debt. [*Id.*, at 100, 104, 121, 125-26]. In addition to obligations under the business manager agreement, there were numerous notes secured by vehicles that ADT II was paying. [*Id.* at 100]. According to Kevin Rettig, the purpose of the Agreement was to make the company as lean as possible in order to compete in the market by consolidating its debt and to provide the Bank additional security for its willingness to take on the risk associated with keeping the business open. [*Id.* at 100, 102, 115]. In his deposition, Kevin Rettig testified that the restructuring that occurred pursuant to the Loan Agreement permitted ADT II to continue operating for another twelve to eighteen months. [*Id.* at 118-19].

Although signed by Rettig, she did not participate directly in the negotiation of the Agreement. Rather, according to her husband, through conversations with him, she was aware that ADT II was struggling financially, that he was talking to the Bank "to try to get ADT II in a good position," and that the Bank was going to require Plaintiff to guarantee a new cognovit note and to provide additional collateral for that loan. [*Id.* at 125-26]. At her deposition, Rettig testified that she was under much stress at the time the Agreement was executed due to an automobile accident that involved her son and that she does not recall the conversations leading up to the execution. [Doc. # 47, D. Rettig Depo., pp. 9-10, 19]. However, she testified that she understood that the purpose of the Loan Agreement was "to keep the doors [of ADT II] open and not call in what was owed [by ADT II] at the time." [Doc. # 47, D. Rettig Depo., p. 18].

The Loan Agreement required the loan to be evidenced by a cognovit note, which Rettig also signed on behalf of Plaintiff on April 1, 2003. [Doc. # 19, Ex. B]. In addition, the Agreement required that Plaintiff "cause" ADT II to (a) guarantee Plaintiff's obligations under the Agreement and (b) grant to the Bank a security interest in certain accounts listed on schedule 1(c) attached thereto in order to secure both Plaintiff's obligations under the Agreement and ADT II's guarantee. [*Id.*, Ex. C, § 1(c)]. The accounts listed on schedule 1(c) total $581,336.18. [*Id.* at 52-54]. Any proceeds or payments relating to the listed accounts received by either Plaintiff or the Bank were to be used to prepay the loan provided for in the Agreement. [*Id.*]. The Agreement also set forth additional property that was to serve as collateral securing Plaintiff's obligations to the Bank, including two parcels of real property owned by Plaintiff. [*Id.* at § 2]. In April 2003, in accordance with the Agreement, Rettig, on behalf of Plaintiff, executed mortgage agreements granting the Bank security interests in the two specified parcels of real estate. [*Id.*, Exs. D & E]. The

3

Agreement further required Plaintiff's obligations to be personally guaranteed by Rettig and her husband and secured by "certain equipment owned by [Plaintiff] and described in Exhibit A" attached to the Agreement. [*Id.,* Ex. C, § 2]. Exhibit A is entitled "ADT II Owned Equipment Evaluation" and consists of five pages itemizing vehicles and equipment and their estimated value.[3] [*Id.* at 47-51]. The vehicles and equipment, however, were owned by ADT Corp, not ADT II.

At the time Rettig signed the Agreement, she and her husband together met with a representative of the Bank. [K. Rettig Depo., p. 126-27]. Rettig signed the Agreement after being presented with the signature page only and without having read the document. [Plaintiff Ex. B, Rettig Aff. ¶ 3; Doc. # 47, D. Rettig Depo., p. 11]. She was never presented with any of the other Loan Agreement papers, [Rettig Aff ¶ 3], nor did she request to review the Agreement before signing, [Doc. # 47, D. Rettig Depo., p. 20]. Although Rettig signed the Agreement on behalf of Plaintiff, neither Plaintiff nor Rettig owned any interest in ADT II or ADT Corp. The parties do not dispute the fact that Plaintiff did not receive any loan proceeds under the Agreement.

On March 8, 2005, ADT Corp's Chapter 11 bankruptcy case was converted to a case under Chapter 7. The Chapter 7 trustee sold vehicles and equipment owned by ADT Corp that were listed in exhibit A of the Agreement. Pursuant to a stipulated order signed by counsel for the Bank and counsel for Plaintiff resolving a joint objection filed by those parties relating to the proper distribution of the sale proceeds, the trustee issued a check in the amount of $442,292.78 payable to the Bank and Plaintiff. [*See* Case No. 02-35135, Doc. ## 241, 247, and 262].[4] The check was ultimately garnished by, and signed over to, the Bank. [Doc. # 47, D. Rettig Depo., p. 16, 27].

On June 29, 2005, the Bank obtained a judgment in state court against Plaintiff and others on the cognovit note. [Doc. # 19, Dugic Aff., ¶ 7, Ex. F]. Thereafter, Plaintiff and others, including both Rettig and her husband, filed a motion to set aside that judgment pursuant to Rule 60(B) of the Ohio Rules of Civil Procedure. [*Id.* at ¶8, Ex. G]. Although the state court otherwise denied the motion, it noted that Plaintiff

---

[3] Plaintiff asserts that the estimated value of vehicles and equipment itemized in exhibit A is $385,000. However, that is the stated total of pages one and two of exhibit A. [Doc. # 19, pp. 47-48]. The total estimated value of equipment listed on the remaining pages of that exhibit is $185,848. [*Id.* at 49-51].

[4] The court takes judicial notice of the contents of its case docket. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (6th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it).

4

had filed for bankruptcy protection and stated that, due to the automatic stay, it would not address any issues concerning Plaintiff's request for Rule 60 relief. [*Id.*, Ex. H]. On appeal, the court found that the lower court's order denying the Rule 60(B) motion was not a final appealable order and, therefore, dismissed the appeal. [*Id.*, Ex. J].

Plaintiff filed its petition for relief under Chapter 11 of the Bankruptcy Code on September 12, 2006, and is continuing its business as a debtor-in-possession. Defendant has filed a proof of claim in the underlying bankruptcy case in the amount of $1,774,489.43 based on a December 15, 2006, Loan Purchase Agreement, under which it asserts it acquired all of the Bank's right, title and interest in the Loan Agreement, cognovit note, and mortgages signed by Rettig on behalf of Plaintiff. [Doc. # 19, Dugic Aff. ¶¶ 2-3 and attached Ex. A, § 2.1].

## LAW AND ANALYSIS

### I. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In reviewing a motion for summary judgment, however, all inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88 (1986). The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party has met its initial burden, the adverse party "may not rest upon the mere allegations or denials of his pleading but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue for trial exists if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party. *Id*.

In cases such as this, where the parties have filed cross-motions for summary judgment, the court must consider each motion separately on its merits, since each party, as a movant for summary judgment, bears the burden to establish both the nonexistence of genuine issues of material fact and that party's entitlement to judgment as a matter of law. *Lansing Dairy v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994); *Markowitz v. Campbell* (*In re Markowitz*), 190 F.3d 455, 463 n.6 (6th Cir. 1999). The fact that both parties

5

simultaneously argue that there are no genuine factual issues does not in itself establish that a trial is unnecessary, and the fact that one party has failed to sustain its burden under Rule 56 does not automatically entitle the opposing party to summary judgment. *See* 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* § 2720 (1998).

## II. Breach of Contract/Failure of Consideration

Plaintiff argues that the Agreement is null and void, arguing that it never received the consideration to which it was contractually entitled. Defendant, on the other hand, argues that it is entitled to judgment as a matter of law on Plaintiff's breach of contract claim because (1) it is barred under the equitable doctrines of res judicata, waiver and laches, and (2) the Agreement was supported by adequate consideration.

In its Memorandum of Decision and Order entered on November 26, 2008, granting Plaintiff's motion to file an amended complaint, the court addressed Defendant's equitable arguments. [Doc. # 35, pp. 3-4]. It found that Plaintiff's amended complaint would not be futile as being barred by the doctrines of res judicata and laches. [*Id.*]. For the reasons stated therein, the court finds Defendant's equitable arguments without merit. However, for the following reasons, the court finds no genuine issue as to whether the Agreement was supported by adequate consideration and will grant Defendant's motion for summary judgment and deny Plaintiff's motion for summary judgment on this claim.

"It is a fundamental principle of contract law that mutual consideration is necessary to support a contract." *Canter v. Tucker*, 110 Ohio App. 3d 421, 423 (1996). As a general rule, courts will not inquire into the adequacy of consideration once consideration is found to exist. *Rogers v. Runfola & Assocs., Inc.*, 57 Ohio St. 3d 5, 6 (1991). "[C]onsideration may be given to the promisor or to a third person and may be given by the promisee or a third person." *Coldwell Banker Residential Real Estate Servs., Inc. v. Bishop*, 26 Ohio App. 3d 149, 151 (1985). "[W]here there is a material breach of contract, substantial nonperformance and entire or substantial failure of consideration, the injured party is entitled to rescission of the contract. . . ." *Yurchak v. Jack Boiman Const. Co.*, 3 Ohio App. 3d 15, 16 (1981). However, a partial failure of consideration is not grounds for rescission unless the failure defeats the very purpose of the contract. *Thompson v. R & R Serv. Sys., Inc. v. Cook*, Nos. 96APE10-1277 & 96APE10-1278, 1997 WL 359325, *12 (Ohio App. 1997) ("A failure of consideration does not void a contract or justify rescission unless it goes to the essence of the contract or frustrates the essential purpose of the contract.").

In this case, the undisputed facts show that the Bank extended credit to Plaintiff that was applied to

refinance or restructure debt owed by ADT II . That ADT II reaped the benefit of the Agreement rather than Plaintiff does not result in a failure of consideration. *See Bishop*, 26 Ohio App. 3d at 151. Although it is true, as Plaintiff argues, that the Agreement does not specifically include a requirement that the Bank forbear executing on the assets of ADT II or permit ADT II to continue operating its business, there is no dispute that the essential purpose of the Loan Agreement, cognovit note and mortgages signed by Rettig on behalf of Plaintiff was to restructure debt of ADT II and provide the Bank with additional security with the intended outcome being that ADT II could continue operating its business. There is no suggestion that such debt restructuring did not occur and, in fact, ADT II was able to continue operating its business for some time after the parties entered into the Agreement. The court finds that the extension of credit to Plaintiff to restructure the debt of the business in which her husband owned a 50% interest is consideration sufficient to support the Agreement.[5]

Nevertheless, Plaintiff argues that the Bank failed to convey certain equipment and vehicles itemized in exhibit A of the Loan Agreement and accounts receivable set forth in schedule 1(c) to which she believes she was entitled under the Agreement. According to Plaintiff, such failure of consideration renders the Agreement null and void.

Although the Agreement states that one of the purposes of the Bank extending credit to Plaintiff was to "purchase the [Bank's] interest as Lessor under certain Sherman & Co. equipment leases (collectively, 'ADT Equipment Leases),"[6] Plaintiff has failed to direct the court, and the court has failed to find, any provision in the Agreement requiring the Bank to convey the equipment itemized in exhibit A that is attached thereto. The only reference in the Agreement to exhibit A is in connection with the provision requiring Plaintiff to grant the Bank a security interest in the equipment "owned by Borrower." [Doc. # 19, Dugic Aff., Ex. B, ¶ 2]. While the Agreement is not a model of clarity, it appears to assume that Plaintiff was or would become the owner of the equipment set forth in exhibit A and that the equipment would be used to secure Plaintiff's obligations under the Agreement. Although, in fact, the equipment was owned

---

[5] The court agrees with Plaintiff that the Agreement contains no provision requiring the Bank to forbear executing on ADT II assets due to delinquent payments on the debt owed it and that such forbearance is not consideration under the Agreement. But ADT II's ability to continue operating its business was, nevertheless, the natural result flowing from the refinancing/restructuring of ADT II's debt. While the consideration set forth in the Agreement was the extension of credit to restructure debt, the reason for doing so was to permit ADT II to continue its business operations.

[6] The record is silent as to any connection between the equipment leases to which the Agreement refers and the equipment itemized in exhibit A of the Agreement.

7

07-03149-maw    Doc 61    FILED 09/30/09    ENTERED 09/30/09 15:23:53    Page 7 of 11

by ADT Corp and was sold in that company's Chapter 7 bankruptcy case, the proceeds of that sale were distributed by check made payable to Plaintiff and the Bank and were ultimately applied to the debt Plaintiff owed the Bank as contemplated under the Agreement. The court, therefore finds, as a matter of law, that the Bank's failure to convey the equipment to Plaintiff, to the extent the Agreement can even be construed as requiring such, is neither a material breach of the Agreement nor a failure of consideration that defeats the purpose of the Agreement.

As to the accounts receivable, the Agreement does not provide or even suggest that they will be conveyed to Plaintiff. Rather, the Agreement clearly provides that Plaintiff "will cause ADT II" to convey a security interest in the accounts receivable *to the Bank* to secure the obligations of Plaintiff under the Agreement and ADT II under the guarantee required by the Agreement. [*See* Doc. # 19, Dugic Aff., Ex. B, ¶ 1(c)].

### III. Fraud

Under Ohio law, in order to establish a claim of fraud, a plaintiff must prove the following elements: "(1) a representation or, where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance." *Martin v. Ohio State Univ. Found.*, 139 Ohio App. 3d 89, 98 (2000).

Plaintiff argues that she was fraudulently induced to sign the Agreement with neither knowledge nor reasonable opportunity to learn of its character or essential terms. Specifically, Plaintiff argues that she was presented with the signature page of the Agreement only and that (1) the Bank misrepresented in exhibit A to the Agreement that the owner of equipment itemized in that exhibit was ADT II when the true owner was ADT Corp.; (2) the Bank similarly misrepresented in financing statements filed with the Ohio Secretary of State, which filings occurred after execution of the Agreement, that ADT II was the owner of the itemized equipment; (3) the Bank misrepresented to the Bankruptcy Court that, pursuant to the Agreement, it had assigned its claim against ADT I to Plaintiff; (4) the Bank never filed a claim in ADT Corp's bankruptcy case; and (5) the Bank filed a financing statement indicating that Plaintiff was the secured party with respect to the equipment in exhibit A nearly two years after the execution of the Agreement and less than one month later "took back the . . . filing conveying the security interest to [Plaintiff]." [Doc. # 42, Pl. Motion for

Summary Judgment, p. 9].

Initially, the court notes that the Bank's alleged misrepresentation to this court set forth in (3) above occurred in the objection to the Chapter 7 trustee's motion to sell personal property in ADT Corp's bankruptcy case. [*See* Ex. G]. That objection was filed jointly by Plaintiff and the Bank and was signed by counsel for both parties. [*Id.*]. Thus, the representation was that of both Plaintiff and the Bank. The court also questions whether the Bank could unilaterally "take back" a security interest that it had granted simply by filing another financing statement as set forth in (4) above. In any event, except for the misrepresentation set forth in (1) above, all of the alleged misrepresentations occurred after Rettig signed the Loan Agreement on behalf of Plaintiff. Thus, Rettig obviously could not have relied on them at the time she executed the Agreement. And although it is undisputed that exhibit A attached to the Agreement incorrectly indicates that the equipment and vehicles itemized therein are owned by ADT II rather than ADT Corp, it is also undisputed that Rettig did not see that exhibit until well after she executed the Agreement. Consequently, Plaintiff cannot, as a matter of law, demonstrate that Rettig relied on any alleged misrepresentation or concealment at the time she executed the Agreement.

Plaintiff's argument that only the signature page of the Agreement was presented to Rettig at the time it was executed, without more, is insufficient to support a fraudulent inducement claim. The Ohio Supreme Court has explained that "'[a] person of ordinary mind cannot be heard to say that he was misled into signing a paper which was different from what he intended, when he could have known the truth by merely looking when he signed.'" *ABM Farms, Inc. v. Woods,* 81 Ohio St. 3d 498, 503 (1998) (quoting *McAdams v. McAdams*, 80 Ohio St. 232, 240-241 (1909)); *see Upton v. Tribilcock*, 91 U.S. 45, 50 (1875) ("It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written."). It is undisputed that Rettig never even asked to review the Agreement. She cannot now argue that, had she reviewed it, she would not have signed it.

In light of the foregoing, the court finds that Defendant is entitled to judgment as a matter of law on Plaintiff's fraud claim.

**IV. Fraudulent Transfer**

In its first amended complaint, Plaintiff alleges that the Agreement is a fraudulent transfer under both 11 U.S.C. § 548(a)(1)(B) and the Ohio Uniform Fraudulent Transfer Act, Ohio Revised Code § 1336.01 *et seq.* Defendant argues that Plaintiff's claim under § 548 is time-barred and that it is not entitled to relief

9

under the Ohio Uniform Fraudulent Transfer Act since that act only provides relief to creditors.

Section 548(a)(1) provides that, under certain circumstances, a transfer of an interest of a debtor in property or an obligation incurred by a debtor may be avoided if "made or incurred on or within 2 years before the date of the filing of the petition." The Bankruptcy Code broadly defines "transfer" to mean, among other things, "the creation of a lien." In this case, in April 2003, Plaintiff transferred an interest in two properties that it owned by granting the Bank mortgages on those properties and incurred an obligation by entering into the Agreement and executing the cognovit note. Plaintiff's bankruptcy petition was not filed until September 12, 2006, beyond the two-year limitation period. Plaintiff's reliance on its receipt of the check from the Chapter 7 trustee in the ADT Corp bankruptcy case in March 2006 and its subsequent signing over of the check to the Bank as bringing its claim within the limitation period is without merit. The transfer of Plaintiff's interest in that check was required by the obligations it undertook when it entered into the Agreement in April 2003. It is that obligation that Plaintiff seeks to avoid. Defendant is, therefore, entitled to summary judgment on Plaintiff's claim under § 548(a)(1).

Plaintiff also specifies Ohio Revised Code § 1336.04(A)(2) in its amended motion for summary judgment, [Doc. # 42, p.9], as an alternative statutory basis for avoidance as fraudulent transfers of the transactions at issue in its first amended complaint. That section provides as follows:

> (A) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following ways:
> . . . .
> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, *and* if either of the following applies:
>
> > (a) The debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction;
> >
> > (b) The debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

Ohio Rev. Code § 1336.04(A)(2) (emphasis added).

Under Ohio Revised Code § 1336.07, "a creditor" may avoid a transfer or obligation that is fraudulent under § 1336.04 to the extent necessary to satisfy the claim of the creditor. Ohio Rev. Code § 1336.07(A)(1). Although Defendant argues that Plaintiff is not a creditor and therefore cannot obtain the

10

relief requested, the Ohio statute applies in this case pursuant to Plaintiff's strong-arm powers under 11 U.S.C. § 544(b) as a debtor-in-possession. Under § 544(b), a trustee (or debtor-in-possession) "may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title. . . ." 11 U.S.C. § 541(b)(1); 11 U.S.C. § 1107(a) (stating that, with certain exceptions not applicable here, a debtor in possession shall have all the rights and powers of a trustee). To the extent that Plaintiff demonstrates that the transactions at issue were avoidable under Ohio law by a creditor of Plaintiff, it is entitled to avoid them under § 544(b) despite not being a "creditor" itself. Thus, Defendant's motion for summary judgment on this claim will be denied.

Plaintiff, however, has not met its burden of showing that the transactions are fraudulent under § 1336.04. Although the Agreement and other associated transactions were entered into solely for the benefit of ADT II, and although it is clear on the evidence before the court that Plaintiff itself received no benefit at all, let alone reasonably equivalent value, Plaintiff offers no evidence showing either element of proof required under § 1336.04(A)(2)(a) or (b). Plaintiff's motion for summary judgment on this claim will, therefore, also be denied.

**THEREFORE**, for the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Plaintiff's Amended Motion for Summary Judgment [Doc. # 42] be, and hereby is, **DENIED**; and

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 55] be, and hereby is, **GRANTED** in part as to Plaintiff's claims alleging breach of contract, fraud, and fraudulent transfer under 11 U.S.C. § 548 and **DENIED** in part as to Plaintiff's fraudulent transfer claim under Ohio law applicable through 11 U.S.C. § 544(b).